# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:

**AERO MECHANICAL INDUSTRIES, INC.,**
a New Mexico corporation,

         Debtor.          Case No.

## DEBTOR'S MOTION FOR INTERIM ORDER APPROVING POST-PETITION FINANCING AND GRANTING SUPERPRIORITY STATUS PURSUANT TO 11 U.S.C. §364(C)(1), AND A LIEN AGAINST ALL PROPERTY OF THE ESTATE, PURSUANT TO 11 U.S.C. §364(C)(2) AND (3, AND FOR A FINAL HEARING ON SUCH REQUESTED RELIEF

     COMES NOW the Debtor, by counsel, and moves the Court, pursuant to 11 U.S.C. §§105, 361, 363, and 364, and F.R.Bankr. P. 2002, 4001 and 9014, for its orders (1) authorizing the Debtor to obtain post-petition financing, as more fully described herein, (2) granting the lender superpriority status as an administrative expense herein for all amounts to be incurred by the Debtor pursuant to such financing, pursuant to §364(c)(1), (3) granting the lender a lien on all assets of the estate pursuant to §364(c)(2) and (3), and (4) setting a final hearing to consider entry of a final order granting all relief sought herein, and as grounds would show:

     1. Debtor filed its petition herein under chapter eleven on April 10, 2015, and is operating as debtor in possession pursuant to §§1107 and 1108.

     2. No committee of unsecured creditors has been formed at this time.

     3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334, in that this is a core proceeding pursuant to 28 U.S.C. 157(b)(2).

     4. Debtor consents to entry of final orders or judgments by the Bankruptcy Judge.

**Background**

5. Debtor is a New Mexico corporation, and operates its business in Rio Rancho, New Mexico, and at a separate location in Fort Lauderdale, Florida. Debtor provides maintenance, repair and overhaul of airframe components and accessories to the global commercial aviation industry.

6. Debtor currently employs 51 people, primarily in the New Mexico operations.

7. With the possible exception of a few equipment leases, Debtor's assets are currently encumbered to secure loans from BB&T, and the liens of BB&T on Debtor's assets appear to be valid and perfected, and to constitute the first and senior liens on virtually all of Debtor's assets, with the possible exception of certain purchase money liens or equipment leases on specific items of equipment.

8. Debtor believes that, among other assets securing the claims of BB&T, cash collateral in this proceeding is subject to the liens of BB&T.

**Necessity and efforts to obtain financing**

9. Prior to the filing of the petition herein, Debtor has made diligent efforts to locate adequate financing for its operations because, for various reasons, its existing available financing is not adequate and its operations have not been sufficient to service the existing financing.

10. On March 31, 2015, Debtor entered into a Letter of Intent ("LOI") with AerSale, Inc., a Florida corporation ("AerSale") pursuant to which, and upon specified conditions, AerSale would provide $1,500,000.00 to the Debtor in a combination of Debtor-in-possession financing (the "DIP Loan"), and purchase funding. A true copy of the LOI is attached hereto as Exhibit 1.

11. Debtor and AerSale have negotiated and propose to enter into a DIP Loan Agreement,

2

in form substantially conforming to Exhibit 2, attached hereto, pursuant to which AerSale will make a line of credit available to the Debtor of up to $1,000,000, for use in operations and in this proceeding, plus an additional $500,000.00, to be paid to BB&T in satisfaction of its claims against the Debtor (and only its claims against the Debtor), and for the release of all BB&T liens against the assets of the Debtor.

12. The line of credit portion of the DIP Loan will be available to the Debtor to continue its business operations, and to administer this proceeding, through plan confirmation. Debtor has prepared a budget of its projected operations for a period of four weeks, which budget is attached hereto as Exhibit 3. Debtor does not anticipate seeking authority to use cash collateral which presently secures the BB&T claims, but rather believes that the DIP Loan facility will be sufficient for such purposes until such time as BB&T releases its liens.

13. Debtor is currently in default of a number of its vendor obligations, lease obligations, and the BB&T agreements, and, in light of this situation, and after exploration of all other potential solutions, Debtor believes that the terms of the DIP Loan Agreement are the most favorable terms available. Were the DIP Lender not interested in acquiring the Debtor's operations, and a new equity position in the Debtor, it would not have provided such financing terms to the Debtor.

14. It is anticipated that the DIP Loan balance, and any other funding made available to Debtor by AerSale during this proceeding, will ultimately be treated as a credit towards the purchase of Debtor pursuant to a plan to be filed herein.

15. Debtor does not believe that alternative financing is available to it, and that no other prospective purchaser could be located elsewhere within the time necessary to save Debtor's operations. Any possible lender willing to grant Debtor DIP financing would likely require a

substantially higher interest rate due to the risk levels inherent in financing debtors in bankruptcy proceedings.

16. The proposed DIP Loan Agreement should be sufficient to ensure that the Debtor has sufficient working capital to continue its operations and to confirm a plan or reorganization which will provide a substantially higher return to creditors than the alternative, which would likely be liquidation.

**Summary of the DIP Loan terms**

17. The proposed DIP Loan terms are the result of lengthy negotiations between Debtor, through Mark Ozenick, its president, and the DIP Lender, and constitutes an arms-length transaction.

18. The material terms of the DIP loan are (1) a line of credit of up to $1,000,000.00, to be drawn on by Debtor for its business operations and for administration of this proceeding, (2) an additional loan of $500,000.00, to obtain release by BB&T of its claims against the Debtor and release of its liens against the Debtor's assets, (3) interest on all amounts at the rate of 12%, *per annum*, until paid. After default or maturity, the agreement provides for interest at the rate of 16% *per annum*. The maturity date of the loan is the earlier of October 15, 2015, or the date of a final decree closing the bankruptcy proceeding.

**Irreparable Harm**

19. As more fully set out in the Declaration of Mark Ozenick, filed herewith, Debtor will not be able to continue its business operations without immediate cash to pay utilities, payroll, and other necessary and immediately due business expenses. The company has furloughed most of its employees, and if some expenses, including payroll, are not paid immediately, it is highly unlikely that the company will be able to resume operations at any later date.

20. If Debtor's business operations cease, the value of its assets will immediately diminish, in that Debtor has "going concern" value, at least to AerSale, which could, under a successful plan, result in some distribution to unsecured creditors. On the other hand, without working capital financing in the form of the DIP Loan, the Debtor's assets would have only liquidation value, and would not yield sufficient net proceeds to even satisfy the BB&T secured claims.

21. Further, Debtor owes payroll and related taxes, and its current employees would not only go without such accrued payroll, but would also lose their employment, with the obvious impact both on the local community, and on the state and federal government.

**Relief Requested**

WHEREFORE, Debtor prays for relief as follows:

A. For an emergency hearing hereon, at which the Court may enter an interim order approving this motion, with fourteen days notice (or such shorter notice as the Court may allow, including setting a date certain to obviate the additional three days for the mailing of notice) to BB&T, the twenty largest unsecured creditors, the US Trustee, and such other parties in interest as the Court may direct;

B. For a final hearing hereon, scheduled to allow Debtor to give twenty-one day notice to all parties in interest herein, at which the Court may grant final approval of the DIP Loan arrangements.

C. For such further relief as the Court considers appropriate.

Respectfully submitted by:
Moore, Berkson, Bassan & Behles, P.C.
Counsel for Debtor
s/ submitted electronically
George M. Moore
3800 Osuna Rd. NE, Ste. 2

Albuquerque, NM 87109  
(505) 242-1218  
Fax: 242-2836  
mbglaw@swcp.com

6